The next matter, number 25-1667, Gary Cifizzari v. Town of Milford et al. At this time, would counsel for the appellant please introduce herself on the record to  May it please the court, Annalise Wagner for Plaintiff Gary Cifizzari. I'd request four minutes for rebuttal. Gary Cifizzari is an innocent man. DNA evidence has conclusively shown that he is innocent and Michael Giroux is the true killer. The prosecution of Gary Cifizzari could not and would not have happened without Milford police officers fabricating a false statement and suppressing evidence of the true killer. Gary Cifizzari deserves his day in court. All we're asking that this court do is allow him to tell his story to a jury. Michael Cifizzari, Gary's brother, is also innocent, as has been established by DNA evidence. But he provided a statement implicating himself and Gary that contained non-public facts that were only known to the true killer and to the police. Necessarily, the only way those facts make their way into Michael's statement is if the police feed him those facts. There is ample circumstantial evidence that defendants DiGirolamo and Chianessi knew that they were feeding Michael a false statement. First of all, the non-public facts were in the statement. They necessarily fed those to him. Second, it was clear to anyone spending a moment with Michael that he was mentally unstable. He was highly suggestible. He would agree to anything you said without knowing what he was agreeing to. Counsel, can I ask you to focus on the causation issue? Because I read your brief carefully and I understand the arguments that you're making about the condition would have been obvious for Michael. He's coming to the police station on a February night in New England because it's cold to sleep and not the time to interrogate somebody that is known to have serious mental health issues. I understand all of that. But how does that link to your client being implicated? How can we really find that the causal chain is strong enough to send this to a jury? Yes, Your Honor. So, defendants here cannot avoid liability because they weren't the ones to ask the last question. Say I agree with you on that. Let's assume that I don't think it needs to be the last person to ask the question. Nevertheless, there are many, many things that happen before your client gets implicated and if we're looking at foreseeability, why is there a jury question that it would have been foreseeable to these police officers that your client would end up being falsely charged? Let me walk you through the night, Your Honor. So, defendants DiGiorlamo and Chianessi, who are Michael's old football coach and Michael's old classmate, fabricate his statement. They know that it's a, or they believe it to be a two-person crime and Michael brings up his cousin. He says his cousin is there. There's evidence in the record at 1536 that DiGiorlamo then calls the town that the cousin's from and learns he has an alibi. So, they've struck out with the relative number one. They then bring him to the state police officer, or the state police department. And the record shows he does that at like two o'clock in the morning or sometime early that same morning? After they've taken Michael's statement, they call to, and they say that it's to get the spelling of his name. A jury could infer that they also ask about his alibi, confirm that he lives there. So, they know that they've struck out with relative number one and they know it's a two-person crime. They then go to the state police department and there's evidence in the record at 553 that they brief Doheny on what's happened so far. We have this confession, but he's implicated someone who has an alibi. There's also evidence in the record that the last question asker doesn't know the name Gary. So, the jury could certainly infer that in that- Where is that in the record, counsel? So, at page 1556, Doheny said he doesn't know Michael personally. A jury could infer from that. He doesn't know he has a brother named Gary. So, the state police is told, we have a confession, we've struck out with the relative number one, he has this brother named Gary. Ask him about Gary. It's then and only then that the state police say, are you sure it wasn't your cousin? Are you sure it was your cousin? It wasn't your brother, Gary. So, by way of analogy, what defendants have done here is provided the state police with a loaded gun and told them to point it at Gary. They are not going to be able to avoid liability because they weren't the ones who pulled the  That statement then tainted every single thing about Gary's investigation, or about the police's investigation into Gary, Gary's prosecution, and Gary's trial. There was no evidence linking Gary to this crime until that statement was fabricated. It was also mentioned at the trial by a witness. After the jury hears that Michael has confessed, the prosecution establishes that Gary was with Michael that night, and then subjects him to a cross-examination that exactly tracks the narrative account of that confession. Did you get high at this area? Did you go to your aunt's house? Did you ask her for money? Did she say, I barely have enough for rent? Did you push her down? Did you hit her with a backhand? By the way, you were with your brother that night, right? Yes. Okay. Did you then go to the refrigerator and get milk to feed the cats? Did you then go get high under the bridge? The jury then received a joint venture instruction. How were those facts known to feed Michael? I mean, I understand the physical facts. Those would be known. But these facts, because your theory is Michael didn't offer any facts. The facts were all offered. That's correct. How would the police have known to offer those facts up? Is your theory they just made that narrative up because it sounded plausible to them? There's a number of facts, Your Honor, that were determined from neighbors, interviews with neighbors in the days following the crime. For example, the bit about opening the refrigerator, a neighbor in an interview with the police said that he saw a flash of light that looked like the refrigerator was opening. There's also facts like the room that she was found in that were only known to the police and the true killer that made their way into Michael's statement. The fact that there was a struggle of her going to the kitchen and then ending up in the living room. So, these were facts that the police knew from responding to the crime scene and from interviewing neighbors. Your friends are going to tell us about the significance of the bite mark evidence, and I'll have questions for them about that. But let's say I found that to be persuasive, and the other arguments that you make about the trial I don't find to be persuasive as to causation. Do you think it's enough that what they did, except in your version of the facts, put your client, put Gary on the radar where he wasn't otherwise there? Is that enough by itself? That's right, Your Honor. To create a claim? That's right, Your Honor. So, this court said in Lamone v. Condon that it violates due process to fabricate evidence and frame individuals for crimes they did not commit. Lamone did not refer to some requirement that the evidence be formally used at trial. Of course, we've just said why we think that it was used at trial and did make a difference. But this bite mark cast wasn't Cinderella's slipper being brought all around town. They only compared it to Gary's dental impression because of the statement. And Gary very well could have only agreed to give a dental impression because he knew that there was this statement from his brother falsely implicating him, and he thought the bite mark evidence would clear him because he didn't know at that time it was junk science. Counsel, can I ask you two related questions on the causation issue? One, I think you'll probably agree, maybe you won't, that to rule in your favor, we do have to follow a chain of many inferences that you're asking us to draw. And I understand your argument that you're on summary judgment appeal. We should be drawing all reasonable inferences in your favor. Nevertheless, it is, in my view, a fairly long chain of inferences we have to put together. So I'm wondering if you have any case that actually supports a finding of causation in that situation. So I'm asking you a legal question. I understand the facts from reviewing your brief. And then the second question I have for you, when you started reciting the facts, you mentioned that the police wanted to present this as a two-person crime or knew it was a two-person crime. You said something to that effect. What is your basis for saying that? I don't remember seeing that in your brief, and I'm wondering if you could tell me specifically what record evidence you are referring to when you make that argument. So I'll take those two questions in turn, Your Honor. First to causation, we have Webb, which says that when defendants make the conditions that made an injury possible, then that's a standing case, but I think it goes to causation here as well. In that case, it was a pharmacy that created conditions that allowed third-party hackers to get information. Also, just to break the chain of causation a bit, really, if you hone in on the conversation that the Milford police have with the state police, briefing them about the interrogation and giving Gary's name and giving the cousin with the alibi, it really isn't so many links in the chain. And to... But we have to assume that a conversation like that occurred and all of those parts were... On page 553 of the record, it says that the state police were briefed on the interrogation. They were read Michael's statement. So I think it's... You can look at that and it's quite an easy inference that follows. And would you mind repeating your second question, Your Honor? I apologize. Yes. No problem. You started off by saying that the police officers decided or concluded or wanted to present this as a two-person crime when they started their interrogation. What's your basis for saying that? I didn't see that in your brief. So we cited to the state court decision, which said that the evidence showed that it was likely a two-person crime. And if you go to the state court's decision, it's because there appeared to be a bloody pillow on her arm that suggested that a second person was holding that to her face as the other person was committing the other gruesome acts. I want to turn to our braiding plan.  Let me just follow up. But I'm asking, what in the record shows that the police officers who were questioning Michael that night decided that they were going to treat this as a two-person crime? And I'm not sure that what the decision says many years later supports your argument. So can you point me to something actually in the record about what the police officers thought at the time? Of course, Your Honor. So there had all of the evidence that was taken from the crime scene, and it was a very gruesome crime. There was blood everywhere. And that's also where they saw the bloody pillow on her arm. So from that, we can see it was being investigated as a two-person crime. And the fact that they had this second person with an alibi, and then Gary was brought up, it shows that it was important to have two people implicated, not just Michael. They could have just stopped with Michael's confession if they thought it was a one-person crime. I know Judge Aframe has a question. So let me just one more. Is there something specific in the record, a page that you can cite me to, that shows that they were investigating it as a two-person crime at the time? So one thing I'll say about this is that the police reports in this case are very sparse, and that's part of our Brady claim. So while there may not be a specific page where they said, we're investigating this as a two-person crime, we can see from the evidence they collected, the questions they asked, and the way that this all happened, that they plainly did think it was a two-person crime. And that's why the state criminal court said that the evidence showed that this was committed by two people. Before you get to Brady, I think the conspiracy charge relates to sort of what we're talking about here. Can you just describe to me what you say the conspiracy is, who it's between, and what the theory of it is? Yes, Your Honor. So the conspiracy is between defendants Chianessi and DiGirolamo, and the state police. Of course, not all co-conspirators need to be named defendants in order for a conspiracy claim to lie. And I'll also just highlight that. So it's not Chianessi and DiGirolamo as a separate, like they could have been a conspiracy? So Your Honor could find that. But really, we think the meat of the conspiracy claim is between them and the state police. And so what's the evidence that Donahue shared some kind of intention, because what you've told me so far is these other two guys do the thing at Milford, bring him there, tell him what happened, feed him Gary's information, and that seems to rest with them. What's Donahue's sort of nefarious piece? So he took the information and implicated Gary. And he also added a couple details to Michael's statement. So I think that this court has said that evidence of a conspiracy is going to always be circumstantial. Allegations can be sparse. And here- That's not wrong to ask about Gary. I mean, if the police say one relative wasn't there, these other two local guys say, but I know him from Milford, and it might be you should ask him about the brother because maybe he's confused. I mean, that's not a wrong. That doesn't suggest to me that the state police guy did something wrong in that situation. What's important to keep in mind there, Your Honor, is that it's obvious to anyone interacting with Michael that he has no idea what he's talking about. He was declared incompetent for trial and psychiatrically hospitalized for months the day after this happened. So there really is no way, or at least a jury could find, there's no way that Doheny is talking to him and thinking, yes, on his own, he's providing me all of these coherent details about the crime. That's simply not borne out by our expert report and by the evidence in this case. Counselor, let me go to the Brady issue. If there's a Brady claim, it's the ones who are responsible for providing Brady. It's the Worcester County District Attorney. You agree with that, correct? Liberto is really the one that is the biggest player in our Brady claim, and he's a Milford police officer. But he's not prosecuting. Brady applies to the prosecution team. It also applies to police officers who don't turn information over to the prosecutors. And we've cited cases for that in our brief. Which count of your complaint is the Brady claim? So Your Honor, we can amend our complaint all the way up until trial. That's what the oral argument before this seemed to be all about. Rule 8 is about notice. And here, the very first paragraph of our complaint talks about suppression of evidence. Additional paragraphs of our complaint refer to that. Defendants were on notice. I mean, it's an odd... At some point, I guess you'd have to amend it, but then there would be new discussion. I mean, it just seems like that's not a claim that I see in the complaint. There are a few stray references to suppress. The Monell claim is the only place I could see a failure to train about Brady. So I read Judge Guzman's opinion. She doesn't address Brady. When was... I mean, maybe you'll amend it later and she'll let you or she won't. I have no idea. But I don't see how that's any part of this. So as you correctly identified, it underlies our Monell claim. It underlies our conspiracy claim. But more fundamentally, the rules require notice of facts. And defendants just need to be on notice of our theories of liability. They're clearly on notice here. And you have like seven counts that talk about theories. They have nice titles that give theories. And I don't see anywhere where it talks about other than that one reference to failure to train on Brady within Monell. I mean, I just... You may be able to amend it. Maybe she'll let you. Maybe she'll reopen discovery. I can picture a lot of things that maybe will happen. I guess I don't understand what we're supposed to do with that when it hasn't been ruled on by the district court. It's not clearly in your complaint. So at the very least, as you've identified, it's in our Monell claim. And our Brady-Monell claim is very strong because the person who was told this amazing Brady evidence that the real killer came home wearing bloody clothes was the chief of police during Gary's trial. Did you develop in your Monell claim sort of a pattern in practice where there were multiple problems in Milford about... We did, Your Honor. So there was an independent review done of the Milford Police Department that was given to the department three weeks before Michael's interrogation that showed, among other things, that there was no policy in place at all regarding the requirement to disclose exculpatory evidence, the proscription against fabricating evidence, and interrogating witnesses. So this is a classic policy of an action case under Connick. It also is a final policymaker case given that Defendant Liberto is the one who never disclosed that someone said the real killer came home with bloody clothes the night of the murder. And Judge Guzman simply didn't believe that deposition testimony, which is clear error that needs to go to the jury. And as to Liberto and Small, how are they related to the fabricating evidence claim? Don't strike me that they are. So they're much more related to the Brady claim. The fabrication is really about D.G. Olamo and Chia Nesse. And if there aren't further questions, I would just say that all we're asking is that Gary be able to tell his story to a jury. There's clear evidence here that could show that defendants are liable and Gary deserves his day in court after 40 years. Okay, let's hear from opposing counsel. Thank you. Would counsel for the appellees please introduce himself on the record to begin? May it please the court, Anthony Heck on behalf of the defendant appellees. This is a tragic case involving a wrongful conviction. But under Section 1983, the question is not whether a wrong occurred, but whether these defendants caused a violation of this plaintiff's constitutional rights. The investigation and prosecution were directed by the state police and the district attorney. They controlled the investigation, made the charging decisions, developed the forensic evidence, and handled the prosecution. So in your position, the minute the Worcester County D.A. takes over, they're in charge, they're liable for charging, for prosecuting, everything. I mean, under MGL, Chapter 38, Section 4. The law sends a case over them. They are required to direct and oversee it. But if the Milford police officers had participated in the initial investigation, aren't they somehow responsible for, you know, it's like a domino principle. They set the first domino down and they keep knocking down each other. Are you talking about in terms of the beginning of the investigation or the interrogation with Michael? Not everything, you know.  Because everything starts at Milford and then end up, pursuant to Massachusetts law, end up in Worcester County. Well, the state police, the CPAC, and the district attorneys were responsible for and controlled the investigation. Then they controlled the obtaining of the forensic evidence. They obtained, they controlled the... I guess I don't understand the legal import of that. If the theory of the case is that these two officers from Milford fabricated evidence to put Michael on the radar and Gary on the radar, and then the people in charge take that information and trundle off to put a case together, they can't just escape liability by saying, oh, we don't run this investigation. That cannot possibly be the answer. Well, first, your honor, there is no evidence of fabrication. There's no evidence that they knew that it was false, that Michael did not... Well, their theory is that given the innocent person somehow knew all the magic facts that ended up being true, there's only one possible way that could happen, and that's he was told them and he was told them because they knew they had a weakened person and they were trying to build a case by telling him the facts so he would agree to them. That is their theory. A jury may believe it, a jury may not. I understand that theory, and you're standing there saying, and they are not responsible for that if that's what the jury believes, because some other entity had the ultimate decision-making power. That just cannot be. There's also a causal break in between. I mean, Gary's not mentioned at all in the initial interrogation by the town of Milford. That's undisputed. Counsel, is that correct, though? I thought that, and just to get your help on this, I do find this the trickiest part of the case, and so I think it is really helpful to try and focus in on the causation issues if you could. I thought that Gary did come up in the initial interrogation, based on the record, because in response to a question by the police officers, he says something like, oh, I would do anything for my brother, and that happens in the initial interrogation. And as your opposing counsel has argued, there is reason to make an inference that Sergeant Doheny wouldn't have known that Gary even existed, but for the Milford police officers essentially serving up his name to Sergeant Doheny to ask about at the second phase of the interrogation. So can you just respond to that, because again, the basic argument here is you've got an extremely vulnerable person. The Milford police knew that. It's his former coach. This man had been living on the streets of the town. He was homeless. He was known to be somebody with mental health issues, serious mental health issues. Comes to the police department one o'clock in the morning on a February night in New England to try to sleep, and they decide to interrogate him. So the arguments they're making, they don't seem obviously implausible to me, so if you could help us figure out the causation issue, which I think is really the tricky issue that would be really useful. Okay, Your Honor. I can step through that interrogation process. So obviously he comes in at one in the morning. He had come in at least six times prior to that. That's just a good... Honest, if I could counsel, I think we know the facts. It would be really helpful if you could focus in on, you know, what does the case law show about causation when you have a long chain here? What are the inferences that you may disagree with? We're familiar with the facts, and I think juries could look at them differently, so... Under Springer and set in motion, it has to be the particular act. And the particular act that implicated Gary, or yes, implicated Gary was by Sergeant Doheny at that separate second interrogation. There's no evidence that... But their response is, he didn't know that Gary existed. So the only way he would know that Gary existed is because his name was presented to Sergeant Doheny, and that's the causal link. Who are in the room. Yeah. They are in the room. So if you really look at the facts in the light most favorable to them, it would be really helpful if you could tell us why you still think you win if we give them every single inference. Sergeant Doheny was the chief investigator of this. He had this case for at least 17 months. They are blood relatives to this particular, to the decedent, to the victim. And there's no evidence that he did not know that Gary was Michael's brother. So there's just nothing substantiating that there was a conversation in which... What made Michael a suspect? Pardon? What made Michael a suspect to begin with? The record indicates that he looked like he had something to get off his chest. That's what Sergeant... The day of the interview. He beforehand, and then on the day of the interview, the police wait until he appears to be coherent and not on illicit drugs or what have you. And so he did... And there was a voluntariness hearing on this particular issue. What do you mean beforehand and before? I don't understand that. What do you mean by beforehand? My understanding of the record is there is no beforehand. He walks into the police station at one o'clock in the morning on a February evening, and then they decide to interrogate him. He had walked in at least six times prior, and that's Sergeant DeGirolamo's testimony at the suppression hearing. There's a liberto and small time when they bring it up with him and he answers in a way they find completely unbelievable and take him to an institution, from what I understand. So there's that.  And then there's the last thing I know is the interview with DeChamorro and Chianessi. So what about that tells us that this had risen to the level that the state police would have known? Because it seems like at best it's Milford's surmise, but it didn't really seem to congeal to anything until the point that the interview happens on the night that they then take him to the state police. So in terms of small and liberto, Sergeant DeGirolamo says that he did not know about the psychiatric institution event and did not know about the questioning. And that is what he says at the trial of Michael Cifizarri. So suggesting that really Michael is not on the radar until the moment he comes in and for whatever reason that I don't fully understand, these two cops decide, let's ask him about it. Let's for some reason Mirandize him and ask him about this murder. And then he knows all the facts somehow and then they ship him off to state police and stay with him. And this was the coach of Michael, which would say he would also know Gary. It all seems to make sense. So again, I don't think that's the best part of your case. I think Judge Rickleman is talking about the best part of your case if there is one, which is why there's a trial and he's convicted and there's bite mark evidence that has nothing other than putting him on the radar. Is that your why there's no causation? Just before we go to that just for a minute because I still I'm not sure I understood your answer. So I understand that the record shows that Michael sometimes came to the police station to sleep. Yes. But what you just said suggested that the record shows that he was coming to the police station to quote unquote get something off his chest. Where does the record say that? That's what Sergeant DiGirolamo says in the motion. Can you tell me what page of the appendix that is? When you have a chance. Okay. Do you want me to? No, no. But please go ahead. You could always do a 28-J, but it'd be helpful to understand exactly what you mean. But the moment that happened would be the night of the critical interview. Nothing before that. The get off the chest is like we're already doubting the truth of DiGirolamo based on the rest of this. So you're saying that's the key fact, but I just want to make sure that didn't happen until the key night when the evidence suggests he was fed all the information. One there's no evidence that he was fed all the information. I mean there was an inference that can be drawn that he was fed the information. There's nothing before that day of this get off the chest idea. So there was still a voluntariness hearing on the, I'm sorry, there was still a hearing on the motion to suppress, and it was found to be voluntary. It wasn't coerced. It wasn't fabricated. So I don't- A little different, but okay. Counsel, I promise I'm not trying to ask you a trick question. I'm just really trying to understand the record. And maybe you can get the site and send a 28-J letter if you don't know off the top of your head, which is completely fine. I'm just trying to understand. Are you saying that one of the Milford police officers testifies at the suppression hearing that on the earlier nights that Michael came to sleep at the police station, that what he actually said was, I'm coming here to get something off my chest? He looked like he, he did not say that. So I apologize if I misspoke. He looked like he had something to get off his chest and they wanted to discuss with him. I mean in terms of, there's still a big causation issue in this case. There's approximate causation issue. I mean, again, there's beyond the interrogation, there is no dispute that they were, that these defendants were involved in the forensic evidence, were involved in getting the expert testimony to evaluate that forensic evidence. And moreover, there is no, there was no introduction of that confession at Gary Sifizari's- What do you take? So I want to get into all of that in a second. What do you make of the argument? You know, they, they, they decided to set up Michael. This is how they did it. They fed him the information. They were some indicia of a two person crime. So to make it all make sense, they offered up Gary. Now they have their two people. If that, if my question is legally, if that's what they did and then Worcester and state police said, great, we have our two people, let's take it from there. Is the fact that they offered them up in that way sufficient to make out the causation element of the 1983 claim? No Your Honor. There's a clear break in between and two, again, there is no evidence. What's the break? The break in the, between the interrogations. I mean, there's a- The break in the interrogations. Okay. Well, there, there are two separate interrogations. One is with the town of Milford and then one is- There are theories. But they briefed the, I mean, the record, again, we're supposed to look at all the inferences in their favor, counsel, and the record shows that the Milford police officers briefed this, the state officers. The Milford police officers told them what was said at the initial interrogation. And they were in the room, right? But they, pardon? They were also in the room while the state police investigation was going on. There is evidence in the record that they were in and out of the room, but presence alone is insufficient to establish liability. The person to ask the question was Gary, to ask the question was Sergeant Doheny as to Gary. So the causal link, in your mind, the big break is that Doheny is the one who says, was it Gary? Yes. And there's no evidence to indicate that the town of Milford told Sergeant Doheny to ask that question. And just because Michael says he loves his brother is not an indicator that these town of Milford officers thought for this sergeant to ask, it was a Gary instead of the cousin. Because the cousin was the only one that was implicated at that first interrogation. Counsel, I guess what I'm struggling with is your answer to my earlier question was there's nothing in the record to show that Sergeant Doheny didn't know Gary was Michael's  The record shows that the Milford police officers absolutely knew he was the brother. It comes up in the initial interrogation. There's nothing to show that he did know Gary was his brother. Isn't that a jury issue? I mean, this is, again, what I'm struggling with. Is there a case, is there a legal principle that you can really point us to that shows that there's a clear superseding cause here instead of focusing on, you know, inferences that we're supposed to draw all in their favor? Well, in Dantzler v. Impressus, an independent actor breaks the chain. The fact is that Sergeant Doheny is an independent actor here. He is not a party to this present action. And it was his independent decision to implicate Gary. I understand that you're saying that there might have been some conversation, but that's still... Can't we read the record to say it wasn't an independent decision? I guess that's what... Let's just say for the moment that we think it's a jury question, that it wasn't an independent decision by Sergeant Doheny to ask about Gary. Do you still win? And if so, can you tell us why? I mean, yes, Your Honor. In terms of the proximate cause, there's a series of independent decisions by the state and the district attorney in regards to the forensic evidence. And the forensic evidence was the material reason that Gary Sifizari was convicted. But if there's no Michael confession, see, it strikes me that that argument doesn't work necessarily because, sure, that's your best evidence. That's the state's best evidence. But how it can be contested depends on what's available. And it strikes me that not having Michael available, which is the result of his confession that led to the conviction where Gary says, I was with him that night, is a good way to try to undermine the teeth evidence. So you can't undermine the... It's hard to undermine the dentist, but you could try by saying, wait a minute, I have this alibi. And that was lost. I actually want to go back to a certain point. There was a question in regards to how Michael would have known some of these facts. And there is actually an indication, not an indication, there is in the police reports following the interrogation by Sergeant Doheny indicates that his mother was where he got the facts from and that he was not implicated. Michael was not part of that. And also the aunt, Michael Sifizari's aunt, was also a person that he would have gained those facts from. So those are inadmissible reasons, but does explain where these facts may have come from of Michael that were not fabricated by these police officers. Your Honors, I would just like to touch on qualified immunity, if I may. Very briefly. Pardon? Briefly. You have a minute. Qualified immunity also provides an independent basis to affirm the events at issue occurred in 1981. And at that time, the law... You think in 1981 it was okay to fabricate evidence against someone? No, I mean, that is a generality. I mean, one, it has to be specific to the instances of this case. In their theory, what you have to accept is they offered facts to the person knowing they were in a vulnerable state and therefore likely to agree. Do you think the law was unclear in 1981, if that's what happened, that that was a lawful constitutional thing to do? Well, if we're talking about Michael Sifizari, again, there's a break in between Michael Sifizari's initial interrogation by the town and then there's a subsequent interrogation by the state. We can talk about standing, which the court does address in the underlying decision, in which there's no fair traceability because the injury stems from that question from Gary and there is no evidence to... So it all comes down to whether we view it as one continuous event where Milford is first feeding information to Michael and then feeding information about Gary to Sergeant Donahue. And if that's a plausible rendition, then all of this becomes a jury question in this break that ends the standing, it ends the proximate cause, ends up not being really a jury question about proximate cause. I'm just going to continue to push back. There's no evidence that there was fabrication. There has to be some affirmative evidence for summary judgment. You can't just say, well, there's none that indicates fabrication, so we should get it. They have to show some element of fabrication and there's none in here. And again, it was addressed in Michael Sifizari's motion to suppress hearing in which this was found voluntary coercion. I understand that fabrication may become a separate element, but the evidence indicates that this was a narrative process. And that's what both Sergeant Dijarolamo and Chianisi state in the suppression hearing. Okay. Thank you, counsel. Thank you. Okay. We have your rebuttal. Please reintroduce yourself on the record. You have a four-minute rebuttal. Annalise Wagner for Gary Sifizari. So three points. First on causation. Defendants ask you to take an extremely narrow view of the facts and view all the inferences in their favor. The reason that they're struggling to answer these questions about causation is that if you draw the inferences in our favor, we win and we go to a trial. Essentially appellees have just said, you should believe that the statement wasn't fabricated because Dijarolamo said it wasn't fabricated. Of course that's what he said. That's what everyone will say, every defendant will say in a fabrication case. We're entitled to the inferences. Causation is a classic jury question. If you look to this court's decision in Wine and Spirits, it held that the defendants need not be the final link in the chain of causation as long as the chain is there. So this question really needs to go to a jury. This careful parsing of the facts is for the jury to do. Second, appellees said that Michael got some of these facts from his mom, not from the police. I'd like to read from page 555 of the record, which recounts the interview of Michael's mom with the police. It says, she did not know in what room of the house in which the victim was killed. Michael did. She knew nothing about any money or pocketbook being missing, nor did she know how Ms. Schiappa was dressed. Michael knew all of those things. He did not get it from his mother, certainly not on the summary judgment record. And then briefly on qualified immunity, we've just heard my friend on the other side admit that the need to not fabricate evidence and frame individuals was clearly established. This court said in Lamone v. Condon that that has been self-evident from the very beginnings of the Constitution. And I would also ask that this court rule on qualified immunity because it is a purely legal issue and the record is complete. Mr. Sifizari is 67 years old, and so remanding on qualified immunity and then getting another interlocutory appeal will simply further delay this man's day in court. And I'd just like us to stay grounded in the fact that in this case, as a direct result of doctored and suppressed reports, the plaintiff spent 35 years in prison for a murder he didn't commit. So while we go through these facts about whether it was one or two interrogations about exactly when Gary's name was shared, about the exact facts that Michael was fed by the police, we're simply asking that we present all of those facts to the jury and we let the jury decide what happened to Gary. Thank you. Thank you, counsel.